JON M. SANDS
Federal Public Defender
District of Arizona
250 N. 7th Avenue, Suite 600
Phoenix, Arizona 85007
Telephone: (602) 382-2700
MARK RUMOLD
Cal. Bar No. 279060
mark_rumold@fd.org
Assistant Federal Public Defender
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Malik Antwon Williams,<br>Defendant. | No. CR-25-00534-PHX-SMB-1<br><br>**SENTENCING MEMORANDUM** |

Malik Antwon Williams respectfully requests the Court sentence him to 60 months of probation.

The requested sentence is sufficient, but not greater than necessary, to punish Mr. Williams for the offense and to achieve all other relevant sentencing objectives. *See* 18 U.S.C. § 3553(a).

## I. BACKGROUND

Mr. Williams is 27 years old. He is a committed father and partner, a son, and a sibling. He is in a long-term relationship with his partner, Yessenia. They share a son together; Mr. Williams helps raise Yessenia's daughter, who Mr. Williams has cared for since she was only a few months old.

Mr. Williams, his partner, and their children live together in Mesa. Both Mr. Williams and Yessenia work to support their family. Until recently, Mr. Williams worked night shifts at Burger King, starting as a cook and ultimately being promoted to a

manager. Mr. Williams recently changed positions and is now working at an Amazon Fulfillment Center. He received a raise and better benefits in the new position.

* * *

Malik is a young man with a good heart.

He grew up in a difficult environment in a suburb of Chicago. His biological father was physically, sexually, and mentally abusive. His father is currently incarcerated for sexually assaulting Malik's sibling. As a child, Malik witnessed his father inflict severe physical abuse upon his mother.

Malik and his mother were eventually able to escape his father and start a new life. Although Malik's new home was stable, the neighborhood he grew up in was anything but. Crime and violence were rampant. Malik lost friends in high school to gang violence.

Malik, though, was able to avoid the violence and the gangs. Although he struggled academically in high school, he was not involved in gangs and he was not involved in crime. He went to a military academy during high school, and he tried to enlist after graduation, but he struggled with the Armed Services Vocational Aptitude Battery test.

* * *

Malik moved to Arizona with a friend in 2020. It was his first time living outside of his mother's home as an adult. He struggled: to make new friends and to support himself. It is in the context of that struggle—of a very young man, with some history of intellectual challenges, in a new environment and struggling to support himself—that Mr. Williams engaged in the conduct at issue here.

Malik has admitted to buying firearms on behalf of someone else. He did it to make a few hundred dollars for each purchase. He felt uneasy about what he was doing at the time. He knows it was wrong. And he regrets his involvement.

* * *

Malik has been on pretrial supervision for over a year—since May 2025. In that time, he has maintained employment; his housing and familial relationships are stable; he has consistently tested negative for substances; he has engaged in mental health and substance use treatment; and he has otherwise complied with the conditions of his pretrial release. His adjustment to supervision, according to Pretrial Services, has been "positive."

Malik knows what he did was wrong. But, over the past year, he has done everything within his power to show the Court he can be a trusted, valuable member of society. Malik has overcome the shadow of his father's abusive past to be a reliable partner and father to his children. Malik will overcome this mistake, too: he respectfully requests the opportunity to show that commitment to the Court.

## II. SENTENCING RECOMMENDATION

Mr. Williams respectfully requests the Court impose a sentence of 60 months of probation.

The "overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment," among other factors. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a)).

The Sentencing Guidelines are but one of the many factors to be considered under § 3553(a). While the Guidelines may serve as the "starting point and the initial benchmark for sentencing decisions, *Gall v. United States*, 552 U.S. 38, 49 (2007), the district court may not presume the Guideline range is reasonable.

Correctly calculated, Mr. Williams Criminal History Category is I, his final offense level should be 15, yielding a guideline range of 18-24 months. The plea agreement in this case caps Mr. Williams' sentence at the low-end of that range.

The Court, of course, is free to impose a sentence below the one recommended by the advisory Guidelines and the plea's sentencing cap. *See United States v. Booker*, 543 U.S. 220 (2005).

Considering the Guidelines and the other § 3553(a) factors, the district court must make an "individualized determination based on the facts." *Carty*, 520 F.3d at 991. Here, that individualized determination supports the requested sentence:

*First*, national and Arizona-specific sentencing data reveals that similarly situated individuals regularly receive below-Guidelines sentences. A sentence below 18 months, then, is necessary to avoid unwarranted disparities. *See* 18 U.S.C. § 3553(a)(6). Nationwide JSIN data reveals that—for the 1031 defendants in Criminal History Category I and with a final offense level of 15—over 50% of individuals sentenced under guideline § 2K2.1 received downward variances. *See Judiciary Sentencing Information (JSIN),* U.S. Sentencing Commission.[1] 20% of individuals receive sentences of probation. *Id*. Sentencing data in Arizona confirms this: over the past five years, over 25% of those sentenced under USSG § 2K2.1 and in Criminal History Category I and in Zone D of the Sentencing Table have received sentences of probation. *See Interactive Data Analyzer*, U.S. Sentencing Commission, Sentencing Outcomes (Sentence Type).[2] For those in Zone C (which Mr. Williams is only 2 levels away from), over 50% receive sentences of probation. *Id.*[3]

*Second*, Mr. Williams' personal history and characteristics—in particular, the growth he has shown while on pretrial supervision—support the requested sentence. *See*

---

[1] *Available at* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (selecting for Primary Guideline § 2K2.1, Criminal History Category I, and Offense Level 15).

[2] *Available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard (selection for years 2020-2025, District of Arizona, Primary Guideline §2K2.1, Sentencing Zone D, Criminal History Category I).

[3] *Available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard (selection for years 2020-2025, District of Arizona, Primary Guideline §2K2.1, Sentencing Zone C, Criminal History Category I).

18 U.S.C. § 3553(a)(1). Mr. Williams has overcome substantial adversity to become the young man of character that he is today. He is working full-time to help support two young children; he is in a committed relationship with his partner of many years; he is not using controlled substances; and he has engaged in therapy to help process the trauma of his youth.

For young men who grow up in homes filled with physical and sexual violence perpetrated by a family member, it is an all-too-common trap to fall into similar patterns. Malik has not. As Yessenia's letter to the Court attests, Malik is a "loving and supportive" family member. It is a testament to Malik's good nature and character that he has avoided those patterns altogether.

Courts recognize that disadvantaged backgrounds, like Malik's, can justify a mitigated sentence. A sentencer's consideration of disadvantage suffered during the "formative time" of youth is "especially critical, given our society's long held belief that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse." *Andrews v. Davis*, 944 F.3d 1092, 1117 (9th Cir. 2019) (quoting *Boyde v. California*, 494 U.S. 370, 382 (1990)). Considering Malik's life history allows the Court to impose a sentence reflecting a "reasoned moral response to the defendant's background, character, and crime." *Id*. (internal citations and quotations omitted).

While Malik's good character and disadvantaged background warrant a mitigated sentence, so too does his youth: it is apparent that Malik's relative immaturity played a substantial role in his involvement in this case. *See* 18 U.S.C. §3553(a)(1).

"Youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence." *Eddings v. Oklahoma*,455 U.S. 104, 115 (1982). The Sentencing Guidelines recognize that age, including "the defendant's youthfulness at the time of the offense" are relevant factors to consider in assessing whether a lower sentence is warranted. *See* USSG Appendix B (Part III) (Compilation of

deleted departure provisions), §5H1.1 Age (Policy Statement). The Guidelines also recognize that "lack of educational opportunities, and familial relationships" can contribute to young people's involvement in the criminal justice system. *Id*. And that young people can be more "susceptible to outside influence as their brains continue to develop into adulthood." *Id*.

Mr. Williams was a very young man—only 23 years old—when this offense occurred. And, in addition to his young age, other risk factors were present: he was on his own in Arizona for the first time, he was involved with negative peer groups, and he was struggling to adjust.

All these factors counsel in favor of a mitigated sentence.

*Third*, Mr. Williams' felony conviction, alone, is sufficient in this case to achieve most relevant sentencing goals. The conviction will all but assure that Mr. Williams cannot engage in similar conduct in the future—thus satisfying the needs of deterrence and protection of the community. *See* 18 U.S.C. § 3553(2)(B), (C). And prohibiting Mr. Williams from owning or possessing guns in the future constitutes a serious sanction, and the deprivation of a Constitutional right, befitting the severity of the crime. 18 U.S.C. § 3553(a)(2)(A). In this particular case, custody is not necessary to achieve deterrence, protection of the community, or to further impress upon Mr. Williams the severity of the offense.

*Finally*, in a case like this, a custodial sentence would likely cause more harm than good. Custody would interrupt Malik's lawful employment, which is his family's primary source of income. Losing his job would not only make reentry more difficult for Malik, but it would thrust his small family into greater economic uncertainty. Custody would disrupt the stable, prosocial family, work, and therapy systems that he has developed over the past 15 months of pretrial supervision. And custody could leave Malik with lasting developmental and psychological consequences. Research on young adults shows that time in custody can entrench antisocial identity formation, increase stress and trauma

exposure, and reduce future educational and employment opportunities. These harms are most pronounced for first-time offenders, like Malik, who have demonstrated compliance and reform in the community. A custodial sentence, then, is greater than necessary to achieve meaningful sentencing goals.

**III. CONCLUSION**

For all these reasons, Mr. Williams respectfully requests the Court impose a sentence of 60 months of probation.

Respectfully submitted: August 26, 2026.

JON M. SANDS
Federal Public Defender

*s/Mark Rumold*
MARK RUMOLD
Asst. Federal Public Defender